IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**ENTERED**

SEP 2 7 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

PEGGY A. BROWNING,         )
                               )
        Plaintiff,          )
                               )
v.                          )      CIVIL ACTION NO. 1:04-0963
                               )
JO ANNE B. BARNHART,      )
Commissioner of Social Security,  )
                               )
        Defendant.        )

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Application for Disability Insurance Benefits (DIB) under Titles II of the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff has filed a Motion for Judgment on the Pleadings and a Motion for Remand. (Document No. 12.) Defendant has filed a Motion for Judgment on the Pleadings. (Document No. 15.) Plaintiff has filed a Response to Defendant's Motion for Judgment on the Pleadings. (Document No. 18.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Peggy A. Browning (hereinafter referred to as "Claimant"), filed an Application for DIB on May 28, 2002, alleging disability as of January 1, 1999, due to "hearing loss both ears, speech affected, varicose veins in both legs, legs swell, poor vision." (Tr. at 92 - 94, 108.) The claims were denied initially and upon reconsideration. (Tr. at 37 - 40, 42 - 43.) On November 20, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 46 - 47.) The hearing was held on December 11, 2003, before the Honorable Steven DeMonbreum. (Tr. at 396 - 469.) By Decision dated July 6, 2004, ALJ DeMonbreum determined that Claimant was not entitled

to benefits. (Tr. at 15 - 32.) The ALJ's Decision became the final decision of the Commissioner on August 26, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6 - 7.) On September 7, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(c). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

2

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

---

[1] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

which you are able to function. See 12.00C through 12.00H of the Listing of
Impairments in appendix 1 to this subpart for more information about the factors we
consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the
degree of your functional limitation: Activities of daily living; social functioning;
concentration, persistence, or pace; and episodes of decompensation. See 12.00C of
the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas
(activities of daily living, social functioning; and concentration, persistence, or pace),
we will use the following five-point scale: None, mild, moderate, marked, and
extreme. When we rate the degree of limitation in the fourth functional area (episodes
of decompensation), we will use the following four-point scale: None, one or two,
three, four or more. The last point on each scale represents a degree of limitation that
is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless

evidence indicates more than minimal limitation in the claimant's ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including
depression, will be deemed severe when (A) there is medically documented continuous or
intermittent persistence of specified symptoms and (B) they result in two of the following:
marked restriction of activities of daily living; marked difficulties in maintaining social
functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated
episodes of decompensation , each of extended duration or (C) there is a medically documented
history of a chronic affective disorder of at least 2 years' duration that has caused more than a
minimal limitation of ability to do basic work activities with symptoms currently attenuated by
medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a
residual disease process resulting in such marginal adjustment that a minimal increase in mental
demands or change in the environment would cause decompensation; or (3) a current history of 1
or more years' inability to function outside a highly supportive living arrangement, and the
indication of a continued need for such an arrangement.

4

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

Regulation further specifies how the findings and conclusion reached in applying the technique must

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written
> decision issued by the administrative law judge and the Appeals Council must
> incorporate the pertinent findings and conclusions based on the technique. The
> decision must show the significant history, including examination and laboratory
> findings, and the functional limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s). The decision must include a specific
> finding as to the degree of limitation in each of the functional areas described in
> paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ found that Claimant met the disability insured status

requirements on January 1, 1999, the date when Claimant stated she became unable to work, and

continued to meet them through September 30, 2001, her date last insured under Title II of the Social

Security Act. (Tr. at 31, Finding No. 1.) The ALJ then determined that Claimant satisfied the first

inquiry because she had not engaged in substantial gainful activity between January 1, 1999, and

September 30, 2001. (Tr. at 31, Finding No. 2.)  Under the second inquiry, the ALJ found that

Claimant suffered from "hypthyroidism, speech/hearing problems, vision problems, vericose veins,

and osteoarthritis, impairments that are 'severe' under the Regulations." (Tr. at 31, Finding No. 3.)

At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level

5

of severity of any listing in Appendix 1. (Tr. at 31, Finding No. 4.) The ALJ then found that "on or

before September 30, 2001, the claimant retained the residual functional capacity to perform work

at the light level of exertional activity. In addition, the claimant should have avoided tasks that

required more than occasional climbing, balancing, kneeling, crouching, crawling, or stooping. She

should have also avoided tasks that required exposure to hazards and temperature extremes. Thus,

the undersigned finds that the claimant retains the residual functional capacity to perform a

significant range of light work at the light level of exertion." (Tr. at 26.) The ALJ concluded that

Claimant could return to her past relevant work. (Tr. at 29 and 31, Finding No. 8.) The ALJ

concluded in view of Claimant's RFC and based upon the testimony of vocational expert Jean

Hambrick that jobs existed in significant numbers in the regional and national economies which

Claimant could perform including work as a recreational aid and helper, laundry worker and parts

inspector. (Tr. at 32, Finding No. 12.) On this basis, benefits were denied. (Tr. at 32.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on June 30, 1949, and was 54 years old at the time of the administrative hearing, December 11, 2003. (Tr. at 18 - 19, 92, 401 - 402.) Claimant completed high school though she states that she was held back a couple of years because of her grades. (Tr. at 405.) In the past, she worked as a hotel housekeeper, cafeteria worker and stock clerk. (Tr. at 18, 414 - 418.)

## The Medical Record

The Court has reviewed the medical evidence of record and will discuss it in relation to Claimant's arguments.

## Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Seeking judgment on the pleadings, Claimant contends that the Commissioner's decision is not supported by substantial evidence because the ALJ did not properly assess and weigh the evidence pertaining to her mental and psychological conditions and functioning under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C in view of this Court's holding in Rabon v. Barnhart, Civil Action No. 1:02-1267. Claimant asserts that the record supports a finding that she has qualifying severe mental impairments – depressive disorder and mild mental retardation. (Document No. 13, pp. 5 - 11.) Seeking remand, Claimant states that after the Appeals Council's decision of August 26, 2004, she filed a second claim for SSI benefits under Title XVI and her claim was allowed at the initial

7

level pursuant to Rule 202.04 of the Medical-Vocational Guidelines.[3] (Id., pp. 9 - 10.) Claimant

states that "[i]f the plaintiff gridded out because of advanced age (55 years old or more), she certainly

did so in advance of the [Administrative Law] Judge's decision of July 6, 2004; she turned 55 on

June 30, 2004. This Court addressed a similar situation in Reichart v. Barnhart, 285 F.Supp.2d 728

(S.D.W.Va.. 2003). The Court found remand the appropriate remedy." (Id., p. 10.)

The Commissioner contends that the ALJ properly determined that Plaintiff's mental

impairment did not meet listing § 12.05C. The Commissioner asserts essentially that a three-prong

test applies in consideration of Claimant's § 12.05C claim and "Rabon is distinguishable from this

case . . . because the ALJ here 1) thoroughly discussed his duty to determine whether Plaintiff

exhibited deficits in adaptive functioning during her developmental period and 2) properly

determined that the record failed to evidence that Plaintiff had deficits in adaptive functioning as a

child." (Document No. 16, p. 10.) The Commissioner states that "substantial evidence in the record

supports the ALJ's determination that Listing 12.05C was not met because the record did not

evidence the requisite IQ scores during the period relevant to this DIB application and did not

evidence that Plaintiff had deficits in adaptive functioning during her developmental period." (Id.,

p. 15.) The Commissioner states that "Plaintiff . . . failed to provide school records to corroborate

her claim of adaptive functioning deficits prior to age 22." (Id., p. 11.) The Commissioner further

claims that Claimant "identified only physical issues – not mental retardation or any other mental

---

[3] Rule 202.04 of the Medical-Vocational Guidelines also known as "the Grids" provides
that a person with a residual functional capacity for light work who is of advanced age (55 years
of old and over), has a high school education or more and has a history of unskilled work
experience must be found disabled. According to Rule 202.13, a person with the same
characteristics who is closely approaching advanced age (50 through 54 years old) must be found
not disabled.

impairment – as the reason that she stopped working . . .." (<u>Id.</u>, pp. 11 - 12.) The Commissioner appears to contend that the ALJ properly determined that Claimant's daily activities and work history evidenced that she did not have the requisite deficits in adaptive functioning. (<u>Id.</u>) The Commissioner states that Claimant " had no history of mental health treatment and did not seek same until January 2003 – <u>4 years after the start of the relevant period and nearly one and a half years after the relevant period ended.</u>" (<u>Id.</u>, p. 13 (Emphasis in brief).) Finally, the Commissioner asserts that the ALJ properly determined that the opinions of Dr. Vrinceanu and Dr. Steinhoff should be given little weight. (Id., p. 14.) The Commissioner does not address Claimant's request for remand.

In her Response to the Commissioner's Motion for Judgment on the Pleadings (Document No. 18.), Claimant disputes the Commissioner's assertion that the record contains no evidence that Claimant had deficits in adaptive functioning before age 22 citing evidence that she was held back two years in school because of her grades, the Commissioner's representation of the evidence which she claimed supported the ALJ's decision and the Commissioner's discussion respecting the applicability of <u>Rabon</u>.

ANALYSIS

"The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, <u>see</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990); 20 C.F.R §§ 404.1525(a) 416.925(a) (2004). Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or

9

supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2004). Additionally, in order to meet the criteria of § 12.05C, Claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2004).[4]

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. Luckey v. U.S. Dept. of Health & Human Servs., 890 F.2d 666 (4th Cir. 1989) (per curiam). A "severe" impairment is one "which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2004). In Luckey, the Court ruled that:

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

---

[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C, provides as follows:

12.05 *Mental retardation*: mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.
    The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Id. at 669 (internal citations omitted). Section 12.05C thus requires a two pronged analysis. The ALJ must consider (1) whether Claimant has a valid verbal, performance or full scale IQ of 60 through 70 and (2) whether Claimant has another physical or mental impairment imposing an additional and significant work-related limitation. Section 12.00D provides respecting the first prong that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." The "additional and significant work-related limitation of function" prong of 12.05C is met when "a claimant could not do his past relevant work." Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985); Alderman v. Chater, 40 F.Supp.2d 367, 371-72 (N.D.W.Va. 1998); Lockhart v. Apfel, 3 F.Supp.2d 708, 711 (W.D.Va. 1998)("In Branham v. Heckler, 775 F.2d 1271 (4th Cir. 1985), the Fourth Circuit held that where a claimant who met the IQ limitations of 12.05C also suffered from a back impairment which precluded his past relevant work but permitted light work, the "significant . . . limitation" prong of the test had been met as a matter of law. Id., at 1273-74.") The second prong "additional and significant . . . limitation" therefore "need not be disabling in and of itself." Branham, 775 F.2d at 1273. A qualifying limitation is one which has more than slight or minimal effect on the claimant's ability to perform basic work. See Lockhart, supra, at 712; Sird v. Chater, 105 F.3d 401, 403 - 404 (8th Cir 1997). The prong is also met when a claimant is found to be able to do his past relevant work but suffers from a severe combination of impairments. Luckey v. U.S.Dep't of Health & Human Services, 890 F.2d 666, 669 (4th Cir. 1989). In Luckey, the Court stated that it had to look at whether the Claimant's low IQ score manifested itself in deficits in his adaptive behavior before age 22. The Court cited Branham v. Heckler, 775 F.2d 1271 (4th Cir. 1985), for the proposition that the absence of an IQ test during the "developmental years"

11

does not preclude a finding of mental retardation predating age 22. See Luckey, 890 F.2d at 668 (citing Branham, 775 F.2d at 1274). The Court found no evidence that the claimant's IQ had changed and that evidence that he could barely read or write was a "clear manifestation" of mental retardation occurring before age 22. Luckey, 890 F.2d at 668-669. The Court further held that the Commissioner could not rely upon a claimant's prior work history to prove non-disability where the section 12.05C criteria are met. See id. at 669. In Boatwright v. Secretary, Dep't of Health & Human Services, 879 F.2d 862, 1989 WL 79720 (4th Cir. July 12, 1989) (unpublished), the Court cited Listing 12.05C, including the introductory paragraph, which read much the same as the current version of the Listing. See 1989 WL 79720, *1. The Court held as follows: "There are two requirements under section 12.05C. First, a claimant's I.Q. score must come within the listed range of 60 to 69 inclusive[5], and second, he must be able to demonstrate an additional significant limitation. We find that claimant meets both of these requirements." Id. at *2. The Court thus found that section 12.05C had two requirements and that the claimant met the Listing with his IQ scores and additional impairments, despite the fact that he had a ninth grade education, a vocational school certificate in maintenance and had past work experience as a factory mechanic. See id. at *1-2. See also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001)(When a claimant presents a valid IQ score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met and she need not present evidence that she manifested deficits in adaptive functioning prior to the age of 22 when she presents evidence of low IQ test results after the age of 22.)

As described in the introduction to the Listing, one of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §

---

[5] The current version of Listing 12.05C requires an IQ score of 60 through 70. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

12.00; See also, The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert

Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage

intellectual quotient with related limitations in two or more of the following: communication, self-

care, home living, social skills, community use, self-direction, health and safety, functional

academics, leisure, and work.").[6] Also, according to the Diagnostic and Statistical Manual of Mental

Disorders, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is

significant deficits in adaptive functioning. Id. at 39-40. Adaptive functioning refers to how

effectively an individual copes with common life demands and how well she meets the standards of

personal independence expected of someone in her particular age group, sociocultural background,

and community setting. Id. at 40. Thus, although Claimant appears to argue that Listing 12.05C is

a two-part test, consisting only of the requisite IQ scores and an additional severe impairment, the

Regulations make clear that it is a three-part test. The Introduction to section 12.00 of the Listings,

section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the
> other mental disorders listings. Listing 12.05 contains an introductory paragraph
> with the diagnostic description for mental retardation. It also contains four sets of
> criteria (paragraphs A through D). If your impairment satisfies the diagnostic
> description in the introductory paragraph and any one of the four sets of criteria, we
> will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; see also Foster v.

Halter, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

---

   [6] "In 1992 the American Medical Association on Mental Retardation changed the
definition of mental retardation to reflect adaptation to the environment and interaction with
others by a person with limited intellectual functioning. Classification based on IQ alone (mild,
52 to 68; moderate, 36 to 51; severe, 20 to 35; profound, less than 20) has been replaced to that
based on level of support needed." The Merck Manual of Diagnosis and Therapy 2259 (Mark H.
Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

The Commissioner asserts essentially that section 12.05C requires a three-part test, with the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period") being the threshold requirement. Although the Fourth Circuit has not addressed this issue after the amendment to the Regulations, other Circuits have held that a claimant must meet the "deficits in adaptive functioning requirement" to meet all of the criteria for Listing 12.05C. See, e.g., Higgins v. Barnhart, 288 F. Supp. 2d 811 (S.D. Tex. 2002) (claimant failed to display adaptive functioning deficits despite requisite IQ scores); Burrell v. Commissioner, 2000 WL 1827799 (6th Cir. Dec. 8, 2000) (receiving benefits under 12.05 also requires a deficit in adaptive functioning). In Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), the Eleventh Circuit held as follows:

> Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

(internal citations omitted). This Court too has followed this approach. See Slaughter v. Barnhart, Civil Action No. 1:03-0058, March 29, 2004, Order, Doc. No. 18 (Faber, C.J.).

The undersigned decided Rabon v. Barnhart, Civil Action No. 1:02-1267, on March 24, 2004, finding that benefits should be awarded based upon a two-prong analysis. On February 13, 2004, the undersigned issued Proposed Findings and Recommendation in Slaughter v. Barnhart, Civil Action No. 1:03-0058, recommending that benefits be awarded based upon a two-prong analysis. By Order filed on March 29, 2004, however, Chief Judge Faber found that the two pronged analysis had been superceded legislatively and a three-prong test applied. Chief Judge Faber stated as follows in

14

Slaughter:

> Judge VanDervort determined that the Fourth Circuit's pronouncements in Branham
> and Luckey are binding on the construction of § 12.05C. The court respectfully
> disagrees. 'Regulations may be modified or revoked from time to time by
> administrative discretion.' United States v. O'Brien, 391 U.S. 367, 380 (1968). The
> Branham and Luckey decisions are binding as to the construction of § 12.05C as it
> existed in 1989. They are not binding after the 2000 revision, and the plain language
> of the current regulations require a claimant to satisfy 'the diagnostic description in
> the introductory paragraph and any one of the four sets of criteria.' 20 C.F.R. Pt. 404,
> Subpt. P. App. 1 § 12.00A.

Applying the three-prong test, Judge Faber concluded that the ALJ's decision was supported by

substantial evidence. The Fourth Circuit affirmed Judge Faber's decision. Slaughter v. Barnhart, 124

Fed.Appx. 156 (4th Cir. 2005).

The record indicates that Claimant had a period of anxiety beginning in October, 2001, after

she was involved in an automobile accident. (Tr. at 2004.) Dr. Dawood gave her a thirty day

prescription for BuSpar. (Id.) On July 30, 2002, Dr. LaRee Naviaux, a DDS psychiatrist, completed

a Psychiatric Review Technique Form finding that Claimant had a non-severe anxiety related

disorder in October, 2001, but had no continuing functional limitations. (Tr. at 235 - 248.) On

November 9, 2002, Dr. Debra Lilly prepared a Psychiatric Review Technique Form indicating no

impairment and noting her October, 2001, period of anxiety though indicating "unable to determine

if acute anxiety or chronic or limitations related to it." (Tr. at 315 - 328.) It appears that Claimant

went to Southern Highlands Community Mental Health Center on January 9, 2003, complaining that

she did not "feel right." (Tr. at 360 - 363.) Dr. Alina Vrinceanu, a psychiatrist at Southern Highlands,

saw Claimant on February 4, 2003. (Tr. at 355 - 359.) Dr. Vrinceanu diagnosed "Depressive

Disorder NOS" and found that she had a Global Assessment of Function of 60.[7] (Id.) She initially

prescribed Lexapro. The record reflects that Dr. Vrinceanu treated Claimant as an outpatient at

Southern Highlands through October, 2003. (Tr. at 338 - 354.) On October 7, 2003, Dr. Vrinceanu

completed a Mental Residual Functional Capacity Assessment. (Tr. at 329 - 333.) She found that

Claimant was markedly limited in her ability to maintain attention and concentration for extended

periods; work in coordination with or proximity to others without being distracted by them; complete

a normal workday and workweek without interruptions from psychologically based symptoms and

perform at a consistent pace without an unreasonable number and length of rest periods; and accept

instructions and respond appropriately to criticism from supervisors and respond appropriately to

changes in the work setting. She found Claimant moderately limited in her ability to remember

locations and work-like procedures; understand, remember and carry out detailed instructions;

---

[7] The DSM-IV Multiaxial Assessment Diagnosis consists of the following:

Axis I: Clinical Disorders
Axis II: Personality Disorders and Mental Retardation
Axis III: General Medical Conditions
Axis IV: Psychosocial and Environmental Problems
Axis V: Global Assessment of Functioning (GAF)

The Global Assessment of Functioning Scale is a system used by clinicians to indicate their overall judgment of psychological, social and occupational functioning. It is therefore a system for measuring the overall severity of psychiatric disturbances. The GAF Scale runs from 100 (no symptoms and superior functioning in a wide range of activities) to 0 (persistent danger of severely hurting self or others and inability to maintain minimal personal hygiene). A GAF score between 51 and 60 indicates the following symptom severity and level of functioning: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or some difficulty in social, occupational or school functioning (e.g., few friends, conflicts with co-workers). A GAF score between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well and having some meaningful interpersonal relationships.

perform activities within a schedule, maintain regular attendance, and be punctual within customary

tolerances; sustain an ordinary routine without special supervision; make simple work-related

decisions; interact appropriately with the general public; get along with coworkers or peers without

distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate

precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make

plans independently of others. Dr. Vrinceanu concluded that Claimant was not significantly limited

in her ability to understand, remember and carry out very short and simple instructions; ask simple

questions and request assistance; and maintain socially appropriate behavior and adhere to basic

standards of neatness and cleanliness. Assessing Claimant's ability to function, Dr. Vrinceanu found

that she had no ability to deal with work stresses. (Tr. at 332.) She concluded that Claimant had poor

ability to follow work rules; deal with the public; interact with supervisors; maintain attention and

concentration; understand, remember and carry out complex and detailed but not complex job

instructions; behave in an emotionally stable manner, relate predictably in social situation; and

demonstrate reliability. She found that Claimant had a fair ability to relate to co-workers; use

judgment; function independently; understand, remember and carry out simple job instructions; and

maintain personal appearance. (Id.)

Mr. William Steinhoff, a psychologist, examined Claimant and administered tests on October

9, 2003. (Tr. at 369 - 375.) Claimant complained that "[s]he feels she has been depressed for at least

the last six months or more." (Tr. at 369.) Intelligence testing resulted in a Verbal IQ of 71, a

performance IQ of 68 and a full scale IQ of 67, which Mr. Steinhoff found "would suggest

intellectual abilities . . . within the range of Mild Mental Retardation." (Tr. at 372- 373.) Mr.

Steinhoff found her test scores valid as they "are consistent with her academic skills, which appear

17

to fall at or near that level as well. She reports poor academic performance and minimal vocational background. There appear to be some deficits present in her adaptive behavior skills in terms of her communication skills as well as deficits in social functioning. (Tr. at 374.) Mr. Steinhoff diagnosed major depressive disorder, single episode, without psychotic features, anxiety disorder and mild mental retardation. Mr. Steinhoff completed a Mental Residual Functional Capacity Assessment finding Claimant markedly limited in most categories. (Tr. at 365 - 368.) He found her ability to function poor, i.e., seriously limited but not precluded, in most areas. (Tr. at 364.)

Considering the evidence discussed above, the ALJ did not find that Claimant was mentally retarded. (Tr. at 21.) After discussing the legal standard for considering evidence under § 12.05, the ALJ stated that "claimant has failed to prove deficits in adaptive functioning manifested prior to age 22." (Tr. at 23.) The ALJ pointed to the fact that Claimant did not submit school records indicating her academic record and achievement test scores. (Tr. at 24.) Based upon Claimant's report that she graduated from high school though at the age of twenty and was not in special education and her activities of daily living, the ALJ found that "[t]hese activities appear on their face inconsistent with one who is life-long mentally retarded with significant deficits in adaptive functioning." (Id.) The ALJ pointed out inconsistencies in the Southern Highlands treatment notes and the findings of Dr. Vrinceanu and Mr. Steinhoff. (Tr. at 24.) For example, the ALJ states that an October, 2003, treatment note indicates that Claimant has a GAF of 60 (Tr. at 338 - 339.), which indicates Dr. Vrinceanu's assessment that Claimant was functioning at the high end of the moderate range and not quite within the mild range, whereas Mr. Steinhoff rated her ability to function as poor in most areas (Tr. at 364.). Considering the RFC findings of Dr. Vrinceanu and Mr. Steinhoff, the ALJ determined that they should be given very little weight. (Tr. at 25 - 26.)

18

The Court finds that ALJ DeMonbreum's decision is in conformity with applicable law and Regulations and supported by substantial evidence. Notwithstanding Mr. Steinhoff's finding of mild mental retardation, the record indicates that Claimant has lived independently coping well with ordinary life demands, and therefore, does not have the required deficits in adaptive functioning. It appears that Claimant worked sporadically from 1970 through 1989 and fairly steadily from 1990 through 1999. (Tr. at 101, 140.) On December 13, 2002, she indicated that she drove every day, watched TV, read and checked on her mother. (Tr. at 137.) She testified that she had lived alone for some time, did her own laundry, cooking, cleaning and shopping, took care of her own financial matters and went to church. (Tr. at 426 - 435.) It is certainly not evident that Claimant had deficits of adaptive functioning going back before the age of 22. Claimant has a high school education and indicated in applying for benefits that she was eighteen when she stopped going to school. (Tr. at 135 - 136.) She stated later that she was retained for two years and was twenty years old when she graduated from high school. (Tr. at 404 - 405.) As the ALJ stated, the record does not contain any school records confirming Claimant's statement. Addressing Claimant's assertion that remand is in order because she was found to qualify for SSI benefits when she turned 55, the Court finds that Claimant did not turn 55 until June 30, 2004, well after the September 30, 2001, date when she was last insured for DIB. Additionally, it is not evident that Claimant's depression as diagnosed by Dr. Vrinchcanu and Mr. Steinhoff existed when she was last covered under the Act. The Court therefore finds that the ALJ did not err in considering and weighing the evidence pertaining to Claimant's intellectual functioning and depression/anxiety and must conclude that the Claimant's assertions to the contrary are without merit.

After a careful examination of the evidence of record, the Court finds that the

19

Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's decision is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 27, 2005.

R. Clarke VanDervort
United States Magistrate Judge